**STATE of Minnesota, Respondent,**

v.

**Robin John RAZMYSLOWSKI, Appellant.**

**No. A03–38.**

Court of Appeals of Minnesota.

Sept. 16, 2003.

Mike Hatch, State Attorney General, St. Paul, and Larry Dean Orvik, Polk County Attorney, and Gregory Alan Widseth, Crookston, for respondent.

John M. Stuart, State Public Defender, Theodora Gaitas, Assistant Public Defender, Minneapolis, for appellant.

Considered and decided by LANSING, Judge, TOUSSAINT, Chief Judge, and SCHUMACHER, Judge.

## OPINION

TOUSSAINT, Chief Judge.

In this postconviction appeal, appellant seeks an award of jail credit for the time he spent at the state correctional hospital in a court-ordered intensive sex-offender treatment program. Appellant argues that the denial of credit for the more than four years he spent at the secure facility violates equal protection. He further argues that there is no rational basis to distinguish the program at the correctional hospital from treatment programs at state correctional facilities.

## FACTS

In early 1991, appellant Robin John Razmyslowski pleaded guilty to two counts of first-degree criminal sexual conduct and three counts of second-degree criminal sexual conduct. He was sentenced to an aggregate term of 122 months, stayed for 25 years, conditioned on his completion of all phases of the Intensive Treatment Program for Sexual Aggressives (ITPSA) at the Minnesota Security Hospital in St. Peter.

On December 18, 1991, Razmyslowski was admitted to ITPSA. On June 30, 1996, the ITPSA program was discontinued and Razmyslowski was returned to Polk County. The district court found that Razmyslowski was in violation of probation for failure to complete ITPSA. The court reinstated probation, conditioned on Razmyslowski being confined to the local correctional facility for one year with privileges to attend the Sexual Offender Treatment Program at Northwest Mental Health Center. In January 1997, after several months at the correctional facility,

the district court ordered Razmyslowski to spend the balance of his incarceration under house arrest.

On September 22, 1998, Razmyslowski was found in violation of his probation for having sex with a 13–year–old girl. He pleaded guilty to two counts of third-degree criminal sexual conduct. The district court then executed the stayed 122–month aggregated sentence and sentenced Razmyslowski to 51 months for the 1998 offenses, to run consecutively with the executed sentence. The district court denied jail credit for the time Razmyslowski had spent in ITPSA.

Razmyslowski filed motions to correct the sentence he received for the 1998 offenses and for jail credit for time spent at ITPSA. The district court denied both motions and Razmyslowski appealed.

On appeal, this court corrected the sentence to 39 months, but affirmed the denial of jail credit for the ITPSA program. *State v. Razmyslowski*, Nos. C7–99–1322 & C5–99–1559, 2000 WL 343211 (Minn. App. Apr. 4, 2000), *review denied* (Minn. June 13, 2000). In denying Razmyslowski's request for jail credit, this court determined that Razmyslowski failed to provide a record to show that his confinement in the ITPSA program was the equivalent of incarceration in a correctional facility. *Id.* at *2. The Minnesota Supreme Court denied Razmyslowski's petition for review, but preserved his constitutional claims for reasserting in a petition for postconviction relief. *State v. Razmyslowski*, No. C7–99–1322 (Minn. June 13, 2000).

On December 23, 2002, Razmyslowski filed this petition for postconviction relief seeking credit for time spent at ITPSA. The postconviction court granted Razmyslowski's request for jail credit for the 37 days spent at The Security Hospital for evaluation, but denied credit for the four years and 163 days he had resided at ITPSA. This appeal followed.

## ISSUE

Did the postconviction court err by denying appellant's motion for jail credit for time spent at a residential-treatment facility as a condition of probation?

## ANALYSIS

██ "The granting of jail credit is not discretionary with the trial court." *State v. Cameron*, 603 N.W.2d 847, 848 (Minn. App.1999) (quotation omitted). Awards of jail credit are governed by principles of fairness and equity, and a reviewing court can only "address this issue on a case-by-case basis." *State v. Dulski*, 363 N.W.2d 307, 310 (Minn.1985). A defendant has the burden of establishing that he is entitled to jail credit for a specific period of time. *State v. Willis*, 376 N.W.2d 427, 428 n. 1 (Minn.1985).

A sentencing court must "assure that the record accurately reflects all time spent in custody in connection with the offense or behavioral incident for which sentence is imposed." Minn. R.Crim. P. 27.03, subd. 4(B). Comments to the sentencing guidelines caution that an offender is not entitled to jail credit for time spent in a residential-treatment facility as a condition of probation. Minn. Sent. Guidelines cmt. III.C.04. Credit for confinement as a condition of a stayed sentence "is limited to time spent in jails, workhouses, and regional correctional facilities." Minn. Sent. Guidelines III.C.3.

After Razmyslowski filed this postconviction appeal, the Minnesota Supreme Court held that fairness and equity require that jail credit be granted where a residential-treatment . facility is the functional equivalent of a jail, workhouse, or regional correctional facility. *Asfaha v. State*, 665 N.W.2d 523, 527–28 (Minn.2003). The

court clarified that the label given a facility is not determinative and that district courts must look closely at the facts to determine the level of confinement and limitations imposed on a defendant. *Id.* at 528.

Both parties agree that *Asfaha* is controlling here. Both parties also agree that they would not submit additional evidence if this case were remanded to the district court. Therefore, we examine the record on this case under *Asfaha.*

The record shows that, upon admission to ITPSA, all patients were assigned to the lowest security level requiring the most restrictive security measures. Over time, patients could request changes in their security level and receive review of the request. ITPSA typically housed from 32 to 48 patients. It occupied part of the first floor of a satellite building of the Minnesota Security Hospital in St. Peter. A security fence surrounded the facility and a central control center managed all access electronically. Entry to the facility was through an electronically controlled gate and sally port door. The control center had links to a closed circuit television system allowing the staff to monitor the entire perimeter and elements of the building interior.

In addition to professional treatment staff, ITPSA was staffed during the day with a minimum of three to four security staff and one registered nurse. The staff made regular counts and rounds and recorded attendance at sessions. Patients followed a strict daily schedule. Patient rooms had bars on the windows. They were not locked at night, but were monitored. Most patients were not free to roam the building or grounds, but were escorted by staff or a "buddy." Razmyslowski was restricted to the unit except for work duty. If he went outside, he was accompanied by a security officer.

In order to control contraband, clothed pat-down searches and room searches were conducted often. A pat search was required upon return from a workstation. Physical restraints and force were permitted, but not used often. During transportation, however, patients were regularly cuffed, attached to security waist belts, and accompanied by an armed guard. Escape procedures provided for immediate response and enlisting local law enforcement.

These restrictions and the confinement imposed on ITPSA patients appear substantially similar to those at the Lakeview unit of the intensive treatment center program at the Bar–None facility examined in *Asfaha.* *Id.* at 527. The *Asfaha* court concluded that the Lakeview unit was indistinguishable from incarceration at the Minnesota Correctional Facility—Red Wing which qualified for jail credit. *Id.* at 528. Accordingly, based on the facts before the district court and in the record on appeal, we conclude that ITPSA was the functional equivalent of a jail, workhouse, or correctional facility.

### DECISION

Because the record reflects that the restrictions imposed by ITPSA were the functional equivalent to those imposed by a jail, workhouse, or correctional facility, we reverse the district court's decision denying jail credit and remand for the postconviction court to calculate and award jail credit to appellant.

**Reversed and remanded.**