**In re the Matter of HANDLE WITH CARE, INC., et al., Respondents,**

**v.**

**DEPARTMENT OF HUMAN SERVICES, Petitioner, Appellant.**

**No. C3–86–99.**

Supreme Court of Minnesota.

June 5, 1987.

Don Johnson, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Paris DonRay Getty, Kelly S. Rask, Forest Lake, for respondents.

SIMONETT, Justice.

The court of appeals ruled that day care rules adopted by the Department of Human Services (formerly Department of Public Welfare) were invalid because the department acted in excess of its statutory authority and failed to comply with certain statutory procedures. We conclude the department acted properly and reverse.

Effective April 1, 1985, revised rules governing family and group family day care homes, referred to collectively as Rule 2,[1] were adopted by the Department of Human Services. In January 1986, petitioners, who are aggrieved day care providers, brought this pre-enforcement challenge pursuant to Minn.Stat. §§ 14.44 and 14.45 (1986), by filing a "petition for declaratory judgment" with the court of appeals. Petitioners claimed the department had exceeded its statutory authority in issuing the rules. In September 1986, the court of appeals, agreeing with petitioners, ruled that Rule 2 was invalid and directed that the old 1973 version of the rules be reinstated. *Handle With Care, Inc. v. Department of Human Services*, 393 N.W.2d 421 (Minn.App.1986). The court of appeals' order has been stayed, leaving the new rule in effect, pending our decision. *See* Minn. R.Civ.App.P. 136.02.

Minn.Stat. § 245.802, subd. 1 (1986), provides that the Commissioner of Human Services "shall develop and promulgate rules pursuant to chapter 14 for the operation and maintenance of day care and residential facilities and agencies * * *." The subdivision goes on to require the commissioner to consult with other appropriate state agencies in developing the rules. The 1984 legislature, however, enacted 1984 Minn. Laws, ch. 658, § 2, adding a new subdivision 4 to the statute. This subdivision, which is the basis of our dispute here, reads, in part:

**1.** The rules are more formidably referred to as Minn. Rules §§ 9545.0310 to 9545.0450. These licensing rules regulate most aspects of family

day care including nutrition, safety, daily activities, educational background of the providers, and other matters.

Subd. 4. The commissioners of human services, public safety, and administration shall conduct a comprehensive study of the issues surrounding the licensure of family or group family day care homes and day care centers. The commissioners shall prepare a report for the legislature with recommendations for rules that will ensure a safe environment for children but which do not discourage the provision of quality day care services. The report must be delivered to the appropriate legislative committees by February 1, 1985.[2]

In fact, no such report was submitted. Nor is it clear if any comprehensive study, at least on any organized basis, was conducted. In March 1985 the Department of Human Services submitted a three and one-half page "Status Report" on day care regulations to the legislature, "as required by Chapter 658." The status report, however, was late; it was not submitted jointly by the three commissioners; and it did not contain recommendations for regulations. Attached to the report were the already adopted new family day care rules and a copy of the Administrative Law Judge's report.

The issue, then, is whether the study and report requirements of subdivision 4 are conditions precedent to the adoption of valid rules.

The department argues that a "plain reading" of subdivision 4 shows that no report is required before any rules can be adopted. The petitioners, on the other hand, point out the statute says the commissioners "shall" conduct a study and

"shall" prepare a report with recommendations and that the report "must" be delivered by a certain date. The department counters by pointing out subdivision 4 is silent about the consequences of a failure to make the study and report and, if the study and report are requirements, they are directory only, not mandatory. Both sides express confidence in their "plain" reading of subdivision 4. We are unable to share either's confidence. From our reading of the statutes, it is unclear if the study and report requirements were intended to be preconditions to the adoption of rules by the department or not. We agree with amici [3] that one needs to review the legislative history of subdivision 4, particularly within the context of the making of revised Rule 2, for any help in discerning the legislature's intent.

### I.

In 1983 the Department of Public Welfare and the Legislative Commission to Review Administrative Rules (LCRAR) [4] began studying revision of the day care rules. Day care providers were especially unhappy with fire and building code rules regarding exits from day care homes and with staff/child ratios. A task force was formed and eventually the LCRAR submitted recommendations on fire and building safety to the department. Throughout 1984 the department continued with rule drafting. Written comments were solicited and reviewed. Finally, in late November, a public hearing on the proposed rules was held before an Administrative Law Judge. In January 1985, the judge issued his re-

---

2. Subdivision 4 also has a second paragraph:

> Before adopting any rules regulating family or group family day care homes, the commissioner of human services shall consult with the state fire marshal and the state building inspector. The fire marshal and the state building inspector shall review the rules to ensure compliance with laws that are administered and enforced by their agencies.

This second paragraph expressly requires the commissioner to consult with others before adopting any rules. The parties agree this consultation was done.

3. Child Caring, Inc., and four other organizations assisting day care providers have filed an amici brief, urging that we look to the "legislative speech" in ascertaining the intent of chapter 658.

4. The Legislative Commission to Review Administrative Rules (LCRAR) is a commission established by statute to "promote adequate and proper rules by agencies and an understanding upon the part of the public respecting them." Minn.Stat. § 14.40 (1984). Serving on the commission are five senators and five representatives.

port essentially approving revised Rule 2.[5] On March 8, 1985, the commission adopted the revised Rule 2, effective April 1, 1985.

Late in the 1984 session, while the department's rulemaking was in process, a bill (Senate File 2030; House File 2135) was introduced, which eventually became chapter 658. The bill dealt with suspending the fire marshal's authority to adopt or enforce rules on staffing requirements and exits in day care homes. (S.F. No. 2030, first reading March 21, 1984; H.F. No. 2135, first reading March 26, 1984). The bill passed the Senate on April 14, 1984, 1984 Journal of the Senate 6009.

At the April 5, 1984, meeting of the House Health Care Subcommittee, Representative Wayne Simoneau, the House author of the bill, explained the problem of overlapping jurisdiction between the fire marshal and the department of public welfare and stated that the "gut issue" was how many children a provider could care for before hiring a second adult. A number of people testified on the safety and staffing issues without any consensus being reached. The assistant DPW commissioner, Mel Harris, testified that his department took no position on the bill, and added, "We are in the process of promulgating Rule 2 * * * and all of the issues here pertain to the promulgation of that rule." When asked by the subcommittee chairman when the department expected the rule revision to be completed, Mr. Harris replied that he anticipated the rule would come to public hearing in June or July 1984. Representative O.J. Heinitz, expressing concern for the safety of children, offered an amendment, which was adopted, calling for a comprehensive study and a report on recommendations for rules for a safe environment. House Health Care Subcommittee Meeting (tape of April 5, 1984). The Heinitz amendment eventually became subdivision 4 of section 245.802.

On April 24, 1984, the last day of the legislative session, the Senate bill was introduced on the House floor. Representative Simoneau, the House author, moved to amend the Senate bill by substituting the language of the House committee's version. 1984 Journal of the House 10073–10074. Thus the bill would then contain three sections: section 1, a provision on number of exits in large day care centers; section 2, the Heinitz amendment for a comprehensive study; and section 3, the original bill taking away the fire marshal's authority to make rules on exits and staff/child ratios. Representative Janet Clark moved to amend section 3, explaining—

With the suspension of the rules [fire marshal's rules] we leave a void in staffing ratios, and what this amendment would allow is that DPW, who is now in the process of adopting rule 2, would be able through that rulemaking process to come up with appropriate staffing ratios.

In response to a question, Representative Clark added, "What we're doing here is saying that facilities should be licensed, we're asking DPW to come up with appropriate regulations for them." House Floor Session (tape of April 24, 1984). The Clark amendment stated that the fire marshal shall not adopt or enforce a rule on staff/child ratios, but then specified, "Nothing in this subdivision prohibits the department of public welfare from adopting or enforcing rules regulating day care, including the subjects [on staff/child ratios and egress] * * *." This version of the bill, including the Clark amendment, passed both houses on April 24, 1984.

To sum up, the bill which became 1984 Minn. Laws, ch. 658, expressly removed the fire marshal's authority to regulate day care homes (the original bill as modified by the Clark amendment); it expressly acknowledged that the DPW had power to adopt and enforce rules regulating day care (the Clark amendment); and it expressly required the three commissioners

---

5. In his report, the Administrative Law Judge found that the department had "demonstrated its general statutory authority to adopt the proposed rules" pursuant to Minn.Stat. § 245.802 and had documented compliance with subdivision 4, paragraph 2, requiring consultation with the fire marshal and building inspector. The judge did not mention the study and report to be submitted to the legislature by February 1, 1985.

to conduct a study on family day care and day care centers and to submit recommendations for rules by February 1, 1985 (the Heinitz amendment). The Clark amendment was codified as part of Minn.Stat. § 299F.011 (1986), a section dealing with the state fire marshal. The Heinitz amendment became Minn.Stat. § 245.802, subd. 4 (1986).

## II.

■ Where statutory wording is not explicit, "contemporaneous legislative history," among other factors, may be considered. Minn.Stat. § 645.16(7) (1986). Thus, we may "consider events leading up to [the legislation], the history of its passage, and any modifications made during its course." *Sevcik v. Commissioner of Taxation*, 257 Minn. 92, 103, 100 N.W.2d 678, 687 (1959). We look to committee reports and journal entries. In addition, the legislature now tape-records its committee meetings and floor debates, and we have, on occasion, considered transcripts of those recordings.[6] Although the rules of both houses state that the testimony and discussion preserved by the tapes are not to be admissible in any court on an issue of legislative intent,[7] we do not believe this statement countermands our consideration of the tapes as authorized by Minn.Stat. § 645.16(7). We should not turn a blind eye to what may be helpful and to what is before us. *See also Stearns-Hotzfield v. Farmers Insurance Exchange*, 360

N.W.2d 384, 389 (Minn.App.1985) (the legislative rules on use of tapes is a statement of intent but does not have the force of law).

The legislature's intent, while deemed singular, arises from, although it is not necessarily the same as, the collective understandings of the individual members. Nor are members' understandings always expressed, or, if expressed, always made for the record. Consequently, statements made in committee discussion or floor debate are to be treated with caution.[8] Statements made, however, by the sponsor of a bill or an amendment on the purpose or effect of the legislation are generally entitled to some weight. *See Woodwork Manufacturers Ass'n v. National Labor Relations Board*, 386 U.S. 612, 640, 87 S.Ct. 1250, 1266, 18 L.Ed.2d 357 (1967); *Federal Energy Administration v. Algonquin SNG, Inc.*, 426 U.S. 548, 564, 96 S.Ct. 2295, 2304, 49 L.Ed.2d 49 (1976). In this case, in addition to the history of the bill through its various forms, we have clear statements made by the bill's sponsor and those moving amendments which are helpful. While the legislative history does not say in so many words what was intended in Chapter 658 by the requirement of a joint commissioners' report, we think the history points us in the right direction.

This much is evident. When it enacted chapter 658, the legislature was well aware the DPW was in the process of revising all

---

**6.** *See, e.g., DeRogatis v. Mayo Clinic,* 390 N.W.2d 773, 776 (Minn.1986); *County of Hennepin v. Brinkman,* 378 N.W.2d 790, 792 n. 5 (Minn. 1985); *Moberg v. Independent School District No. 281,* 336 N.W.2d 510, 517 (Minn.1982).

**7.** *See Permanent Rules of the Senate,* Rule 65, and *Permanent Rules of the House,* Rule 6.6(g). One concern of courts about use of legislative proceedings has been their accessibility to the bar. *Cf. Schwegmann Bros. v. Calvert Distillers Corp.,* 341 U.S. 384, 396, 71 S.Ct. 745, 751, 95 L.Ed. 1035 (Jackson, J., concurrence) (concern for the cost and difficulty of exploring congressional history). In 1971, the Minnesota Senate first required taping of floor sessions. In 1973, taping of committee meetings was added. In 1975, the Senate required that all tapes be labeled, dated, be "accompanied by a log showing the number of each bill considered and the places on the tape where consideration of the

bill occurred," and directed the tapes be kept available at the Legislative Reference Library. In 1973, the House first required taping of floor sessions and, in 1975, added committee meetings, and directed the tapes be filed also with the Legislative Reference Library. The House rules require that the library keep its tapes for at least 2 years and the Senate has a somewhat more extended time period.

**8.** Selective use of statements made in the give-and-take of the legislative process is also risky. "It sometimes seems that citing legislative history is still, as my late colleague, Harold Leventhal, once observed, akin to 'looking over a crowd and picking out your friends.'" Judge Patricia M. Wald, Some Observations on the Use of Legislative History in the 1981–82 Supreme Court Term 25 (July 27, 1982) (remarks delivered at 1983 Eighth Circuit Conference).

aspects of Rule 2. A number of legislators were intimately involved with the rulemaking process, both before and after chapter 658 was passed.[9] The legislature, particularly the House subcommittee, was aware of the problem of overlapping jurisdiction of the fire marshal, the building inspector, and the commissioner. The bill which became chapter 658 was an effort to resolve this problem. The fire marshal's authority to promulgate rules on family or group family day care was removed; the commissioner's authority to make such rules was reaffirmed; but, at the same time, the commissioner was required to consult with the fire marshal and the building inspector before adopting the revised Rule 2. (*See* footnote 2, *supra.*)

It is also evident the legislature wanted the department to complete the Rule 2 revision. *See, e.g.,* Remarks of Representative Clark, House Floor Session (April 24, 1984). The legislature was not, however, satisfied that day care safety issues had been adequately studied. Therefore, the Heinitz amendment (subdivision 4) was added, requiring the three commissioners representing human services, the fire marshal division (public safety), and the building code division (administration) to study safety issues relating not only to family and group family day care homes but also, we note, to day care centers. A report on this study was to be submitted to the legislature by February 1, 1985, even though the legislature knew that the new Rule 2 might be adopted by that date. *See* Remarks of Mel Harris, House Health Care Subcommittee Meeting (April 5, 1984) (proposed rule was expected to come to public hearing in June or July 1984).

 Viewed against this backdrop of legislative history, the meaning and purpose of subdivision 4 of Minn.Stat. § 245.-802 (1986) emerges. It appears that the February 1, 1985, submission date for the report on the comprehensive safety study was chosen so that the legislature would have time in the 1985 legislative session to act on the recommendations made in that report. In other words, the study and report, although mandated by the use of the word "shall," were not also intended to be preconditions to the department's rulemaking, which was authorized to proceed unabated. Rather, the recommendations in the report on further safety measures for the operation of day care homes and centers were to be considered separately by the legislature.

Some further support for this interpretation, if any is needed, lies in the fact that no objection was made at any time by any legislator to the adoption of a revised Rule 2 before the study and report were received. Even after the legislators received a copy of the new rule and a copy of the Administrative Law Judge's detailed report along with the abbreviated "status report" in March 1985 and before the rules became effective, no objection was raised.

We hold that the joint commissioners' study and report required by Minn.Stat. § 245.802, subd. 4 (1986), was not a precondition to the adoption of revised Rule 2, and that the revised Rule 2 is valid.

Reversed.

**9.** The House sponsor of the bill that became chapter 658 was Wayne Simoneau, who was also chair of the Legislative Commission to Review Administrative Rules. Representative Simoneau submitted a letter to the Administrative Law Judge at the rulemaking hearing held in late November 1984 stating the commission had reviewed the proposed Rule 2 and had found it "fully consistent with the [LCRAR's] actions * *. * * * * I would like to thank the Department staff for implementing the LCRAR's request so accurately * * *."

Representative Janet Clark, who offered the Clark amendment to chapter 658 on the House floor, played an active role in forming the ad hoc LCRAR task force which had searched for a solution of the staff/child ratios and the egress requirements for day care homes. It was this task force's report, adopted by the commission, which was submitted to the department for use in the rulemaking process.