**Fithi Chernet ASFAHA, Petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. C6–02–691.

Supreme Court of Minnesota.

July 24, 2003.

Leslie J. Rosenberg, Assistant State Public Defender, Minneapolis, MN, for Appellant.

Michael A. Hatch, Minnesota Attorney General, St. Paul, MN, Raymond F. Schmitz, Olmsted County Attorney, James E. Haase, Assistant Olmsted County Attorney, Rochester, MN, for Respondent.

## OPINION

BLATZ, Chief Justice.

Appellant Fithi Chernet Asfaha, a juvenile, was certified as an adult, pleaded guilty to first-degree assault, and received a 98–month sentence. The sentence was stayed and he was placed on probation. As one of his probation conditions, the district court ordered Asfaha to successfully complete treatment at a residential treatment facility. Subsequently, Asfaha violated his probation and the court executed his 98–month sentence. Concluding that placement at the residential treatment facility was functionally equivalent to placement at a juvenile correctional facility, the court granted Asfaha jail credit for the 288 days spent in the residential treatment facility. On appeal, the court of appeals held that the sentencing guidelines do not allow jail credit for time served in a residential treatment facility and reversed the district court. In this appeal, Asfaha challenges the denial of jail credit on two grounds. First, Asfaha contends that to insure proportionality in sentencing, the appropriate test for granting jail credit

should be whether the defendant is in custody and not simply the official name of the facility. Second, Asfaha asserts that awarding jail credit to some and not other similarly situated individuals violates the equal protection and due process clauses of the federal and state constitutions. Because we hold that fairness and equity require jail credit be granted for confinement in facilities that are the functional equivalent of a jail, workhouse, or regional correctional facility, we reverse the court of appeals and reinstate the district court's ruling.

On May 7, 1996, Asfaha, then age 16, was certified as an adult pursuant to Minn. Stat. § 260.125 (1996) (repealed and reenacted by Act of May 11, 1999, ch. 139, art. 2, § 11, art. 4, § 3, 1999 Minn. Laws 583, 589–591, 692, codified at Minn.Stat. § 260B.125 (2002)) and, as part of a plea agreement, pleaded guilty to one count of first-degree assault under Minn.Stat. § 609.221 (1994) (current version at Minn. Stat. § 609.221, subd. 1 (2002)). At the time, Asfaha was on probation for several juvenile offenses for which he had been adjudicated delinquent. As part of the plea agreement, the state agreed to recommend a stay of execution of the presumptive prison sentence provided that Asfaha complete the previously imposed juvenile probation conditions, as well as those probation conditions imposed in the present case. The stay was also contingent on Asfaha testifying truthfully against the two co-defendants in the underlying case.

One of the probation conditions imposed was that Asfaha enter and successfully complete the Intensive Treatment Center program (ITC) at the Bar–None facility (Bar–None) in Anoka, Minnesota, a locked program for juveniles with severe conduct disorder.[1] Asfaha entered

---

1. The official name of the residential treat-

ment facility is Volunteers of America, Bar–

the ITC on June 13, 1996 and, while in the program, resided in the Lakeview living unit in the ITC building. The literature describing the ITC provides that placement in the program is court-ordered and is for juveniles who have been adjudicated delinquent and often have a history of numerous therapeutic interventions and placement failures. The literature further notes that the ITC "provides a high level of security to guarantee public safety and to assure that residents remain in the program while in treatment." Asfaha spent 288 days in the ITC, successfully completing the program on March 28, 1997.[2]

After his discharge from Bar–None, Asfaha violated several conditions of his probation, leading the district court to revoke probation and execute the prison sentence. At the September 12, 2001 revocation hearing, Asfaha requested jail credit for the 288 days he spent in the ITC. The district court granted his request, concluding that although Bar–None is a residential treatment facility, the restrictions imposed at the ITC program were the functional equivalent of those imposed at the Minnesota Correctional Facility—Red Wing, and that denial of jail credit would be inequitable and a violation of equal protection. The court of appeals reversed the district court and held that because "the sentencing guidelines expressly deny jail credit for time served in 'residential treatment facilities,'" Asfaha could not receive credit for any time spent at Bar–None regardless of the level of

security and punitive impact of the program. *Asfaha v. State,* No. C6–02–691, 2002 WL 1803827, at *3 (Minn.App. Aug.6, 2002). It is from this decision that Asfaha appeals.

On appeal, Asfaha contends that jail credit for his time spent in the ITC should be awarded on two grounds. First, Asfaha asserts that to ensure proportionality in sentencing, the award of jail credit should not depend on whether the defendant is confined in "jails, workhouses, [or] regional correctional facilities" but instead should depend on whether the defendant was in custody in connection with the offense. Because the district court found that Asfaha's confinement while in the ITC was the functional equivalent of confinement in the juvenile correctional facility in Red Wing, Asfaha asserts that he should receive credit for the 288 days he spent there. Second, Asfaha contends that "giv[ing] different amounts of jail credit to adults confined for similar amounts of time for similar offenses" results in disproportionate sentencing and violates the equal protection and due process clauses of the federal and state constitutions.

We begin our analysis by examining the Minnesota Sentencing Guidelines. As originally promulgated by the Minnesota Sentencing Guidelines Commission, the guidelines' jail credit provision excluded credit for time spent in confinement as a condition of probation. Minnesota Sentencing Guidelines Commission, *Report to the Legislature* 36 (1980).[3] When we

None Residential Treatment Service, but is more commonly known as "Bar–None." In addition to the Intensive Treatment Center, Bar–None also has the Residential Treatment Center and Sunrise programs, two less-restrictive programs for juveniles exhibiting severe behavioral problems.

2. Asfaha was in treatment at Bar–None from June 13, 1996, to August 4, 1997. During this

time, he was in the ITC for 288 days and in the unlocked Residential Treatment Center for 129 days. In this appeal, Asfaha is seeking jail credit only for the 288 days spent in the ITC.

3. In 1978, the Minnesota legislature established the Minnesota Sentencing Guidelines Commission and charged it with promulgating sentencing guidelines that were to be ad-

amended Minn. R.Crim. P. 27.03, subd. 4(B) in 1983 to include jail credit for time spent in *custody* as a condition of probation, the sentencing guidelines were modified to include a similar credit. Minnesota Supreme Court Order Promulgating Amendments to the Rules of Criminal Procedure (June 9, 1983); *see* Minnesota Sentencing Guidelines III.C (1984). The corresponding commentary to the amended guidelines stated that credit was to be "limited to time spent in jails, workhouses, and regional correctional facilities." Minnesota Sentencing Guidelines III.C.02 comment (1984). However, in 1999, this limitation originally set forth in the commentary was incorporated into the text of the sentencing guidelines and is in the current version of the jail credit provision. Minnesota Sentencing Guidelines III.C.3.

Accordingly, with regard to confinement while on probation, the sentencing guidelines currently provide that:

> Jail credit shall reflect time spent in confinement as a condition of a stayed sentence when the stay is later revoked and the offender is committed to the custody of the Commissioner of Corrections. Such credit is limited to time spent in jails, workhouses, and regional correctional facilities.

*Id.* While only advisory and not binding on the courts, the commentary to this section of the guidelines specifically notes that "[c]redit should not be extended for time spent in residential treatment facilities * * *." Minnesota Sentencing Guidelines III.C.04 comment; see *State v. Notch*, 446 N.W.2d 383, 385–86 (Minn.1989) (concluding that comments to the Minnesota Sen-

tencing Guidelines were advisory rather than controlling).

■ In this case, the parties do not dispute that Bar–None is a residential treatment facility. The point of contention is instead whether the district court erred in concluding that the restrictions imposed by the ITC were the functional equivalent of those imposed by a correctional facility and therefore, Asfaha must be awarded jail credit for the time spent in the ITC at Bar–None. An appellate court will accept a district court's findings of fact unless they are clearly erroneous. *State v. Colvin*, 645 N.W.2d 449, 453 (Minn.2002). "Findings of fact are not clearly erroneous if there is reasonable evidence to support them." *Id.*

In support of his argument that jail credit should be granted, Asfaha focuses on one of the guidelines' foundational principles: proportionality in sentencing and punishment. *See* Minnesota Sentencing Guidelines I. Specifically, he argues that "[r]igidly adhering to a formalistic test which denies credit based on whether a facility is a correctional facility instead of whether the defendant was in custody * * * creates disparities resulting in disproportional sentences." Asfaha further asserts that principles of fairness and equity, recognized by our court in *State v. Dulski*, should determine whether jail credit is granted and not the label given to the correctional facility. 363 N.W.2d 307, 310 (Minn.1985) (stating "[w]e in no way intend that this decision be the final word on the difficult subject of fairness and equity in the award of jail credit under the Sentencing Guidelines."). In contrast, the state contends that the only way to guarantee that jail credit is applied fairly and

---

visory to the district courts. Act of April 5, 1978, ch. 723, art. 1, § 9, 1978 Minn. Laws 761, 765–67, codified at Minn.Stat. § 244.09, subd. 1, 5 (2002). While advisory, the district courts were expected to follow the guidelines,

departing only when there were "substantial and compelling circumstances" to do so. *State v. Garcia*, 302 N.W.2d 643, 647 (Minn. 1981) *overruled on other grounds by State v. Givens*, 544 N.W.2d 774 (Minn.1996)

equitably is to draw clear lines between the different facilities, seemingly implying that courts should defer to the label attached to a particular facility regardless of the level of restrictions imposed by that facility.

Agreeing with Asfaha's reasoning, the district court concluded that the restrictions imposed by the ITC were functionally equivalent to those imposed at a correctional facility and, therefore, jail credit should be granted for the 288 days Asfaha was in the program. In reaching its conclusion, the district court relied, in part, on a letter from Bar–None's Coordinator of Intake and Clinical Services, which was stipulated to by both parties. The letter described the Lakeview unit where Asfaha resided while in the ITC as follows:

> Lakeview is a 12–bed living unit located in the Intensive Treatment Center building. Although treatment is a major focus, security is the most crucial concern and there have been no escapes from the Intensive Treatment Center. The building is secure, so no one can enter or leave Lakeview without the central control booth operator electronically opening the doors—staff do not carry keys. In order to enter or leave the building, there are three locked doors that must be individually opened by the control booth operator. There is a secure fenced exercise area behind the building that can only be entered and exited through an electronically controlled door and a gym that is entered or exited through a door that also can only be opened by the control booth operator. There are bars on outside windows and surveillance cameras are located throughout the building. The control booth operator monitors activity everywhere, except directly in the cells. Each resident has an individual wet cell that is locked at night and during a crisis. When cells are locked, [s]taff

monitor activity through windows in the doors. Everything happens in the building and fenced area. Food is prepared in the central kitchen and delivered to the living unit, where all meals are served. There are classrooms in the living unit and residents attend school in the locked setting, as well. If a resident must leave the building for a medical appointment or court hearing, he is transported in mechanical restraints. If a resident must be totally isolated, he can be moved to the administrative segregation area in the building.

In addition to the letter, the court also reviewed photographs of a cell at Lakeview and of the perimeter fence around the facility's secured exercise area.

In determining that the restrictions imposed by the ITC were equivalent to a correctional facility and that jail credit should be granted, the district court compared the Lakeview unit to the Minnesota Correctional Facility—Red Wing, a correctional facility for serious and chronic juvenile offenders that qualifies for jail credit under the sentencing guidelines. Minn. Stat. § 242.41 (2002). The court noted that it had been offered "no credible distinction between incarceration at Red Wing and at [Lakeview]" and could see "no basis to distinguish the Defendant, who received treatment while locked for 288 days in Bar–None's [Lakeview unit], from other young offenders who receive their residential treatment locked in Red Wing."

◼ We conclude that Asfaha's arguments and the district court's reasoning are persuasive. It is clear that, based on the findings of the district court, the ITC imposes essentially the same limitations on a person's freedom as a jail, workhouse, or regional correctional facility—perhaps even more. Fairness and equity require that jail credit be granted in such cases so

as to not elevate form over substance. As recognized by Judge Shumaker in his concurring opinion in *State v. Razmyslowski,* what is important is not solely the label attached to a facility:

> [C]ourts should be guided by considerations of fundamental fairness and not by labels in dealing with custody credit issues. If the incarceration is the functional equivalent of a placement in a jail, workhouse, or other correctional facility, custody credit ought to be allowed. Because our workhouse[s] and prisons also provide "residential treatment," fairness requires that we look beyond the label attached to a facility and inquire as to whether the facility operates basically as a jail.

Nos. C7–99–1322, C5–99–1559, 2000 WL 343211, at *2 (Minn.App. Apr.4, 2000) (Shumaker, J., concurring specially).

■ While the establishment of clear lines helps protect the principle of uniformity, proportionality—an equally meritorious principle—also must be sought. *See* Minnesota Sentencing Guidelines I. To that end, district courts must look closely at the facts of the case presented. When the court is presented with evidence that supports a decision that the level of confinement and limitations imposed are the functional equivalent of those imposed at a jail, workhouse, or regional correctional facility, then fairness and equity demand that jail credit be awarded.

In this case, the district court determined that the restrictions imposed by the ITC were the functional equivalent of those imposed at the juvenile correctional facility in Red Wing. Concluding that the record supports the district court's findings, and that the findings are not clearly erroneous, we hold that the court did not err in awarding jail credit for the 288 days Asfaha spent in the ITC.[4] We therefore reverse the court of appeals and reinstate the district court's ruling.

Reversed.

---

4. Because we conclude that jail credit may be granted on this basis, we do not reach Asfaha's second challenge that provisions of the federal and state constitutions are violated by the sentencing guidelines.