**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-1438**

John Wilbur,
Appellant,

vs.

State Farm Mutual Automobile Insurance Company,
Respondent.

**Filed June 20, 2016**
**Affirmed**
**Hooten, Judge**

Hennepin County District Court
File No. 27-CV-10-17956

Wilbur W. Fluegel, Fluegel Law Office, Minneapolis, Minnesota; and

Charles D. Slane, TSR Injury Law, Bloomington, Minnesota (for appellant)

William L. Moran, Julie N. Nagorski, HKM, P.A., St. Paul, Minnesota (for respondent)

Considered and decided by Hooten, Presiding Judge; Larkin, Judge; and Rodenberg, Judge.

**S Y L L A B U S**

In calculating the amount of a discretionary taxable costs award under Minnesota Statutes section 604.18 (2014) for an insurer's unreasonable denial of underinsured motorist benefits to an insured, the term "proceeds awarded," as used in subdivision 3(a)(1) of the statute, means the amount of the judgment entered by the district court as underinsured motorist benefits.

**O P I N I O N**

**HOOTEN**, Judge

Following a bench trial on appellant-insured's claim of unreasonable denial of underinsured motorist (UIM) benefits pursuant to Minn. Stat. § 604.18, appellant challenges the district court's taxable costs award, arguing that the district court misinterpreted the phrase "proceeds awarded" in Minn. Stat. § 604.18, subd. 3(a)(1).  We affirm.

**FACTS**

After sustaining injuries in an automobile accident and obtaining $100,000 in damages from the at-fault driver's insurance company, appellant John Wilbur sued his insurer, respondent State Farm Mutual Automobile Insurance Company, for UIM benefits. Prior to trial, State Farm made an initial settlement offer and payment of $1,200 as UIM benefits and later offered an additional $26,800 to settle Wilbur's UIM claim.  Wilbur declined both of these offers and submitted a settlement offer of $100,000, the full amount of UIM benefits available under the insurance policy.  State Farm declined the offer, and the matter ultimately proceeded to a jury trial in April 2011.  The jury returned a verdict in Wilbur's favor in the amount of $412,764.63 as personal injury damages.  After trial, State Farm moved to reduce the verdict for collateral source payments pursuant to Minn. Stat. § 548.251 (2014).  After reducing the verdict for the $100,000 payment from the at-fault driver's insurer and other collateral source payments, the district court determined that Wilbur's underinsured loss was $255,956.59.  Because Wilbur's policy with State Farm provided only $100,000 of UIM coverage and State Farm had previously paid $1,200 to

Wilbur as UIM benefits, the district court ordered that judgment in the amount of $98,800 be entered in Wilbur's favor.

After the jury verdict, but prior to entry of judgment, Wilbur successfully moved to amend his complaint to add a claim against State Farm pursuant to Minn. Stat. § 604.18, which provides that after an insured receives an award for benefits under an insurance policy, a district court may also award the insured taxable costs. The statute provides that if an insurer unreasonably denies benefits to an insured, the district court may award taxable costs of "an amount equal to one-half of the *proceeds awarded* that are in excess of an amount offered by the insurer at least ten days before the trial begins or $250,000, whichever is less." Minn. Stat. § 604.18, subds. 2, 3(a)(1) (emphasis added). In addition to taxable costs, the statute provides that the district court may award reasonable attorney fees up to $100,000 against an insurer who unreasonably denies benefits to an insured. *Id.*, subd. 3. The district court may also award prejudgment and postjudgment interest and costs and disbursements allowed under other law in connection with the unreasonable denial of an insurance benefits claim. *Id.*

A bench trial was held on the section 604.18 claim in July 2014. In briefing before this trial, State Farm argued that section 604.18, subdivision 3(a)(1), was ambiguous and that the term "proceeds awarded" in the statute should be construed to be capped by the policy limit. Wilbur did not argue that the statute was ambiguous, but in his proposed order construed "proceeds awarded" to mean the net jury verdict, namely, the jury's verdict for personal injury damages adjusted for collateral source payments.

3

In its November 2014 order, the district court found State Farm liable for unreasonably denying Wilbur UIM benefits. The district court determined that Wilbur was entitled to recover $36,000 pursuant to subdivision 3(a)(1) of the statute, consistent with State Farm's interpretation of "proceeds awarded." According to the district court's calculations, because "State Farm was ultimately ordered to pay $98,800 in insurance policy proceeds, which is $72,000 more than the amount of State Farm's offer" of $26,800, Wilbur was entitled to taxable costs of one-half of $72,000, or $36,000. The district court also determined that Wilbur could move to recover reasonable attorney fees under subdivision 3(a)(2) and costs and disbursements allowed under other law.

In March 2015, Wilbur filed a motion to enter judgment and a memorandum in support of his motion. In his memorandum, Wilbur argued that the district court incorrectly construed the statute because the term "proceeds awarded" in section 604.18, subdivision 3(a)(1), referred to the net jury verdict of $255,956.59 and that he was entitled to taxable costs of $113,978.29, one-half of the net verdict in excess of State Farm's last offer.[1] In its June 2015 order, the district court determined that Wilbur's argument regarding the meaning of "proceeds awarded" constituted an improperly brought motion to reconsider. Because Wilbur failed to follow the proper procedure for bringing a motion to reconsider, the district court did not address his argument and entered judgment in his

[1] Presumably, Wilbur used the $28,000 combined offer, instead of State Farm's final offer of $26,800, in calculating his damages in accordance with his construction of "proceeds awarded."

4

favor in the amount of $36,000 for taxable costs, $100,000 for attorney fees, and $35,832.90 for reasonable disbursements. This appeal followed.

## ISSUE

Did the district court err as a matter of law in construing the term "proceeds awarded" in Minn. Stat. § 604.18, subd. 3(a)(1)?

## ANALYSIS

The parties dispute the proper construction of Minn. Stat. § 604.18, which provides a discretionary penalty for the unreasonable denial of first-party insurance claims. This statute provides that a court may award certain taxable costs to an insured who can show that there was an "absence of a reasonable basis for denying the benefits of the insurance policy" and "the insurer knew of the lack of a reasonable basis for denying the benefits of the insurance policy or acted in reckless disregard of the lack of a reasonable basis for denying the benefits of the insurance policy." Minn. Stat. § 604.18, subd. 2(a). If the insured can establish that the insurer is liable for a violation of subdivision 2, "the [district] court may award an insured . . . an amount equal to one-half of the *proceeds awarded* that are in excess of an amount offered by the insurer at least ten days before the trial begins or $250,000, whichever is less." *Id.*, subd. 3(a)(1) (emphasis added). The parties do not dispute the district court's determinations that State Farm violated the statute by unreasonably denying Wilbur his UIM benefits and that Wilbur is entitled to a taxable costs award under subdivision 3(a)(1) of the statute. But, Wilbur argues that the district court erred as a matter of law in construing the term "proceeds awarded" and therefore erred in calculating the taxable costs awarded to him for State Farm's violation of subdivision 2(a).

5

As a threshold matter, State Farm argues that Wilbur forfeited his argument that the district court improperly calculated the taxable costs award because he did not raise the argument to the district court. "A reviewing court must generally consider only those issues that the record shows were presented and considered by the [district] court in deciding the matter before it." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quotation omitted). While Wilbur did not specifically present this issue to the district court, State Farm raised the issue by arguing in its briefing prior to the bench trial on Wilbur's section 604.18 claim that subdivision 3(a)(1) was ambiguous and that "proceeds awarded" should be construed to be capped by the policy limit. Wilbur did not directly respond to this argument, but stated in his proposed order that "proceeds awarded" means "the net verdict."[2] Therefore, the disputed issue was presented to the district court. Implicitly rejecting the proposed order submitted by Wilbur and adopting State Farm's construction of the statute, the district court used the $98,800 judgment entered by the district court in the underlying UIM action, rather than the net jury verdict of $255,956.59, as the "proceeds awarded" in awarding taxable costs to Wilbur. Given these circumstances, the issue of the construction of "proceeds awarded" is properly before us.

---

[2] Wilbur briefed this issue at length in his memorandum to the district court in connection with his motion to enter judgment. However, because the district court determined that Wilbur's arguments regarding the proper construction of "proceeds awarded" constituted an improperly brought motion to reconsider, Wilbur's submissions at that point do not factor into our analysis of whether this issue was raised to the district court. *See* Minn. R. Gen. Pract. 115.11 1997 advisory comm. cmt. ("Motions for reconsideration are not opportunities for presentation of facts or arguments available when the prior motion was considered. Motions for reconsideration will not be allowed to 'expand' or 'supplement' the record on appeal.").

The construction of Minn. Stat. § 604.18, subd. 3(a)(1), is a matter of first impression. The interpretation of a statute is a legal question, which we review de novo. *Frandsen v. Ford Motor Co.*, 801 N.W.2d 177, 181 (Minn. 2011). When interpreting a statute, our "paramount goal" is to effectuate the intent of the legislature. *Auto Owners Ins. Co. v. Perry*, 749 N.W.2d 324, 326 (Minn. 2008); *see* Minn. Stat. § 645.16 (2014) ("The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature."). The first step in statutory interpretation is determining "whether the statute's language, on its face, is ambiguous." *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001). "A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Id.* (quotation omitted). If a statute is unambiguous, this court must "enforce the language of the statute and not explore the spirit or purpose of the law." *Christianson v. Henke*, 831 N.W.2d 532, 537 (Minn. 2013) (quotation omitted). If a statute is ambiguous, however, this court "may consider the factors set forth by the [l]egislature for interpreting a statute." *Id.* (quotation omitted).

On appeal, State Farm argues that the statute is unambiguous and that "proceeds awarded" means the jury verdict, adjusted for collateral source payments and capped by the policy limit, i.e., the amount of the judgment entered by the district court as UIM benefits. State Farm contends that other uses of "proceeds" in section 604.18, as well as the statute's provision regarding the timing of the proceeding for seeking a taxable costs award under the statute, demonstrate that its interpretation is the only reasonable interpretation.

7

Wilbur agrees that State Farm's interpretation of "proceeds awarded" is reasonable, but argues that there is a second reasonable interpretation: "proceeds awarded" means the jury verdict, adjusted for collateral source payments. Wilbur thus argues that "proceeds awarded" is ambiguous because it has more than one reasonable interpretation and that legislative history supports his position that "proceeds awarded" means the jury verdict, adjusted for collateral source payments.

Section 604.18 does not define "proceeds awarded." Minnesota law provides that "words and phrases are construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a special meaning . . . are construed according to such special meaning or their definition." Minn. Stat. § 645.08(1) (2014).

The term "proceeds" is defined by *Merriam-Webster's Collegiate Dictionary* as "the total amount brought in" or "the net amount received (as for a check or from an insurance settlement) after deduction of any discount or charges." *Merriam-Webster's Collegiate Dictionary* 990 (11th ed. 2003). A note regarding the usage of "proceeds" in *Black's Law Dictionary* states that "[t]he term *proceeds* includes the account arising when the right to payment is earned under a contract right." *Black's Law Dictionary* 1399 (10th ed. 2014). *The American Heritage Dictionary of the English Language* defines the term "award" as "[t]o grant an amount or other benefit legally due." *The American Heritage Dictionary of the English Language* 125 (5th ed. 2011). *Black's* defines "award" as "[t]o grant by formal process or by judicial decree." *Black's Law Dictionary* at 164.

The definitions of "proceeds" do not clarify whether "proceeds awarded" refers to the net jury verdict or the UIM award. The *Merriam-Webster's* definition of "proceeds" as "the total amount brought in" arguably supports Wilbur's construction because the net jury verdict is the jury's findings of Wilbur's total personal injury damages, adjusted for collateral source payments. However, this definition also arguably supports State Farm's construction because the total amount that was actually awarded by the district court was limited contractually by the insurance policy. The *Merriam-Webster's* definition of "proceeds" as "the net amount received (as for a check or from an insurance settlement) after deduction of any discount or charges" does not address the situation where, as here, the net amount that can be received by the insured is limited contractually by the insurance policy. Because the heart of the parties' dispute is whether "proceeds awarded" is capped by the policy limit, this definition does not resolve the ambiguity of the term. Finally, while the comment in *Black's* that "the term *proceeds* includes the account arising when the right to payment is earned under a contract right" supports State Farm's construction, it is a note regarding the use of the term, rather than its definition. And, neither of the two definitions of "proceeds" in *Black's* provides any guidance regarding the use of "proceeds" in subdivision 3(a)(1).

Likewise, neither the common definition nor the technical definition of "award" resolves the question of whether Wilbur's or State Farm's interpretation of subdivision 3(a)(1) is correct. The *American Heritage* definition of "award" as "[t]o grant an amount or other benefit legally due" does not resolve the ambiguity because, while the jury made findings as to Wilbur's personal injury damages, the district court awarded Wilbur UIM benefits in accordance with the jury's findings. Likewise, the *Black's* definition of "award" as "[t]o grant

9

by formal process or by judicial decree" does not resolve the ambiguity of the term "proceeds awarded." While the jury made findings regarding Wilbur's damages by formal process, the district court entered judgment in Wilbur's favor. We also note that *Black's* defines the noun form of "award" as "[a] final judgment or decision, esp[ecially] one by an arbitrator or by a jury assessing damages," further demonstrating the ambiguity of the term. *Black's Law Dictionary* at 164.

A court may ascertain the meaning of doubtful words in a statute "by reference to their association with other associated words and phrases." *Wong v. Am. Family Mut. Ins. Co.*, 576 N.W.2d 742, 745 (Minn. 1998) (quotation omitted). The term "proceeds" is used several other times in section 604.18. First, it is used in the definition of the term "insurance policy":

> "Insurance policy" means a written agreement between an insured and an insurer that obligates an insurer to pay *proceeds* directly to an insured. Insurance policy does not include provisions of a written agreement obligating an insurer to defend an insured, reimburse an insured's defense expenses, provide for any other type of defense obligation, or provide indemnification for judgments or settlements.

Minn. Stat. § 604.18, subd. 1(a) (emphasis added). The statute also provides that "[a]ttorney fees may be awarded only if the fees sought . . . are not duplicative of the fees for the insured's attorney otherwise expended in pursuit of *proceeds* for the insured under the insurance policy." *Id.*, subd. 3(a) (emphasis added). These two other uses of "proceeds" are explicitly connected with "insurance policy," unlike its use in subdivision 3(a)(1). Because the legislature did not include an explanatory clause in subdivision

3(a)(1), it is unclear whether "proceeds" in this subpart of subdivision 3 means the net jury verdict or the UIM award.

With regard to the timing of bringing a claim, the statute provides that "[a]n award of taxable costs under this section shall be determined by the [district] court in a proceeding subsequent to any determination by a fact finder of the amount an insured is entitled to under the insurance policy." *Id.*, subd. 4(b). It is not clear, however, that "proceeds awarded" means the UIM award, rather than the net jury verdict, simply because a claim under section 604.18 can only be heard after the district court determines the benefits to be paid *under the insurance policy*. Because section 604.18 provides a penalty for unreasonably denying an insured the benefits of an insurance policy, not a determination of what benefits the insured is entitled to under the insurance policy, it is not clear that "proceeds awarded" in section 604.18 means the UIM award. We conclude that "proceeds awarded" is ambiguous because it is subject to more than one reasonable interpretation and its association with other words and phrases in the statute does not clarify its meaning.

Because we have determined that "proceeds awarded," as it is used in section 604.18, subdivision 3(a)(1), is ambiguous, we may consider the factors set forth by the legislature in order to ascertain legislative intent. *Christianson*, 831 N.W.2d at 537. When construing statutory language, we ascertain legislative intent by considering, among other things, "the legislative history of the act under consideration, the subject matter as a whole, the purpose of the legislation, and [the] objects intended to be secured thereby." *Staab v. Diocese of St. Cloud*, 853 N.W.2d 713, 718 (Minn. 2014) (quotation omitted); *see*

Minn. Stat. § 645.16 (2014) (providing factors to be considered in ascertaining legislative intent).

In order to understand the purpose of section 604.18, it is important to understand the history of bad faith claims in the insurance context. Minnesota historically distinguished between first-party coverage claims and third-party coverage claims in allowing recovery of punitive damages against an insurer for bad faith failure to settle. *See Pillsbury Co. v. Nat'l. Union Fire Ins. Co.*, 425 N.W.2d 244, 249–50 (Minn. App. 1988), *review granted* (Minn. July 28, 1988) *and appeal dismissed* (Minn. Mar. 13, 1989). First-party coverage entitles the insured to receive benefits directly from the insurer, while third-party coverage satisfies tort claims of third parties against the insured by way of indemnification. *Latterell v. Progressive N. Ins. Co.*, 801 N.W.2d 917, 923 (Minn. 2011). While allowing claims of bad faith in a third-party coverage context, Minnesota courts historically did not allow such claims in a first-party coverage context. *Compare Morris v. Am. Family Mut. Ins. Co.*, 386 N.W.2d 233, 237 (Minn. 1986) ("If an insurer fails to settle in good faith with a third-party claimant, the insured can bring a bad faith action against the insurer . . . ."), *with Haagenson v. Nat'l Farmers Union Prop. & Cas. Co.*, 277 N.W.2d 648, 650, 652–53 (Minn. 1979) (reversing jury's award of punitive damages for bad faith denial of insurance benefits in first-party coverage context, reasoning that first-party claim focused on breach of contract theories and that "extra-contract" damages were not recoverable except in "exceptional cases" where breach was accompanied by independent tort).

By enacting section 604.18, the Minnesota Legislature provided a means for insureds to pursue claims of bad faith denial of first-party insurance benefits. In explaining the purpose of the bill that became section 604.18, the author of the bill, Senator Tarryl Clark, explained that the bill "gives a bit of a deterrent to those who may be making low settlement offers with no intention of making good on what the consumer's actual damages are under the policy." S. Floor Deb. on S.F. 2822 (Apr. 14, 2008) (statement of Sen. Clark). Therefore, section 604.18 was intended to deter insurers from making settlement offers far below the insured's actual damages by penalizing them when they make such offers.

Both parties argue that legislative history supports their interpretation of "proceeds awarded." Wilbur argues that the testimony of William Moran, an insurance defense attorney, at a committee hearing on a related bill demonstrates that the legislature intended "proceeds awarded" to mean the net jury verdict. Moran testified that if "the amount offered by the insurer was $10,000, the award was $80,000, the difference between those two numbers is $70,000 and . . . the award for taxable costs would be $35,000, because that is half of the difference between what was offered and what was ultimately awarded." Hearing on S.F. No. 3116 Before the S. Comm. on Commerce & Consumer Protection (March 6, 2008) (statement of Mr. Moran). Moran's testimony, however, does not support Wilbur's construction of "proceeds awarded" because it does not contemplate the calculation of taxable costs under subdivision 3(a)(1) if the jury verdict exceeds the policy limit, as is the case here. Additionally, Moran was testifying in connection with a related, but separate, senate bill that had language that was substantially different than the language that was eventually promulgated into law through the passage of the bill that became

13

section 604.18. *See id.* We conclude that Moran's testimony as a witness before a legislative committee hearing provides little insight into the legislature's intent regarding the meaning of "proceeds awarded" under subdivision 3(a)(1). *See Handle With Care, Inc. v. Dep't. of Human Servs.*, 406 N.W.2d 518, 522 (Minn. 1987) (stating that in determining legislative intent, "statements made in committee discussion or floor debate are to be treated with caution").

Both parties argue that the statements of Senator Clark at the final senate floor debate support their respective arguments about the meaning of "proceeds awarded." "Statements made . . . by the sponsor of a bill or an amendment on the purpose or effect of the legislation are generally entitled to some weight." *Id.* In the final senate floor debate, Senator Clark described the manner in which a court would calculate the proceeds awarded as follows:

> This bill in many ways looked similar to the way it left except for clarifying language . . . . But I do want to give you a quick example to illustrate what is different, because when the bill left the body, we had caps in place that we have raised and modified.
>
> So for example, the highest amount of awards over what the insurer's costs were would be up to $250,000. There is also a cap on attorneys' fees up to $100,000. Both of those are at the discretion of the court, and the example that I would give is that, let's say that the last offer by an insurer is $50,000, but the amount determined due *under the insurance policy* after the trial is $250,000. One-half of the difference would be $100,000, which would be the amount the insured could recover in additional costs. That's the maximum they could do, so there's a cap of a half up to $250,000.

14

S. Floor Deb. on S.F. 2822 (Apr. 14, 2008) (statement of Sen. Clark) (emphasis added). Contrary to Wilbur's argument that Senator Clark's statement supports his position, her statement suggests that the legislature intended "proceeds awarded" to mean the UIM award because, in her example, she indicated that the term "proceeds awarded" means "the amount determined due *under the insurance policy* after trial." *Id.* (emphasis added).

Wilbur argues that State Farm's construction of "proceeds awarded" would frustrate the legislature's goal of deterring insurance companies from making low settlement offers by providing only a modest penalty for a violation of section 604.18. Specifically, Wilbur notes that the potential penalty under State Farm's construction of "proceeds awarded" could be quite small if the insurer offered only slightly less than the policy limit, even when the insured's actual damages clearly exceeded the policy limit. Wilbur contends that State Farm's construction would frustrate the purpose of the statute by making "'low balling' the insured an economically sound choice" because the insurer would be liable under section 604.18 only for taxable costs of half of the difference between its offer and the policy limit. Wilbur points out that such a construction would force the insured to choose between accepting a low offer or incurring the time and expense of going to trial to enforce payment of the full limit of the policy and then receiving a minimal taxable costs award under section 604.18 in the event that bad faith was proven. For example, under State Farm's construction, if the insured's actual damages clearly exceeded the applicable $100,000 policy limit, but the insurer offered only $95,000, the insured would be forced to choose between accepting the $95,000 or incurring the time and expense of trial to recover

the full $100,000, plus potentially $2,500 in taxable costs under section 604.18 if it was determined that the insurer unreasonably denied the insured the benefits of the policy.

Wilbur is correct that defining "proceeds awarded" as the UIM award significantly limits the taxable costs that the district court can award under section 604.18. Wilbur's contention that State Farm's construction would create a scenario where it would be economically sound for an insurer to offer less than the policy limit even where the insured's damages clearly exceeded the policy limit is incorrect, however, as a district court may also award to the insured up to $100,000 in "reasonable attorney fees actually incurred to establish the insurer's [unreasonable denial of benefits]," along with costs and disbursements incurred in pursuing the 604.18 claim as allowed by other law. Minn. Stat. § 604.18, subd. 3. Therefore, while the insured who receives an offer close to the policy limit has a minimal financial incentive to go to trial and eventually amend its pleadings to seek taxable costs under section 604.18, the insurer still has an incentive to offer the full policy benefits if the insured's damages exceed the policy limit because the insurer may be liable, if the insured chooses to go to trial, for taxable costs as calculated by the formula in subdivision 3(a)(1), plus up to $100,000 of the insured's attorney fees that were incurred in establishing a violation of section 604.18.

Moreover, even under State Farm's construction, the statute provides a strong disincentive for an insurer to offer an amount substantially lower than the insured's damages falling within the policy limit, as the insurer could be liable for half of the amount that is "in excess of an amount offered by the insurer," up to $250,000. Therefore, contrary to Wilbur's assertion, State Farm's construction of "proceeds awarded" does not frustrate

16

the purpose of the statute, but rather provides an incentive, albeit a significantly more modest incentive than that which would result under Wilbur's construction, for the insurer to minimize its potential liability by making a reasonable offer of UIM benefits, up to the policy limit.

Wilbur argues that State Farm's construction of the statute would render the statute a nullity because the insurance company would never have to pay more in damages than its limits, even in the presence of bad faith. But, under State Farm's construction of the statute, assuming that the jury returned a verdict that was in excess of the policy limit even after adjustment for collateral source payments, the insurer would have to pay full benefits under the policy, plus, at the district court's discretion, the taxable costs awarded under section 604.18, subdivision 3(a)(1), and the insured's reasonable attorney fees incurred in connection with the section 604.18 claim, up to $100,000. Thus, under State Farm's construction, the insurer could still have to pay far more than the policy limit to the insured if the insurer was found to have violated section 604.18.

Illustrative of this construction, under the facts of this case Wilbur was awarded a total of $171,832.90 in connection with his section 604.18 claim, consisting of $36,000 in taxable costs, $100,000 in attorney fees, and $35,832.90 in costs and disbursements. Therefore, due to State Farm's unreasonable denial of insurance benefits, Wilbur was awarded $171,832.90 in addition to the UIM policy limit of $100,000 that he was awarded in the underlying trial. While this amount is approximately $78,000 less than the amount that Wilbur would have received had the district court adopted his construction of "proceeds awarded," the amount awarded clearly penalizes State Farm for its failure to

17

make a reasonable settlement offer. Even if State Farm had made a more reasonable settlement offer in this case, thereby reducing the taxable costs awarded under subdivision 3(a)(1), having to pay even these lesser taxable costs, as well as attorney fees, costs, and disbursements, in excess of its $100,000 policy limit, would effectively encourage State Farm to make reasonable settlement offers of first-party benefits to its insureds in the future.

Furthermore, the statute imposes a penalty for an insurer's unreasonable denial of insurance benefits, and the Minnesota Supreme Court has stated that "statutes that are penal in nature are construed narrowly against the penalty." *Hans Hagen Homes, Inc. v. City of Minnetrista*, 728 N.W.2d 536, 543 (Minn. 2007). The fact that subdivision 3(a) prescribes a penalty is evidenced by subdivision 3(b), which provides that "[a]n insured may not also recover punitive or exemplary damages or attorney fees under section 8.31 for a violation of this section." The statute's prohibition on *further* recovery of punitive or exemplary damages demonstrates that the taxable costs award allowed by the statute is a penalty against insurers that unreasonably deny insurance benefits. Moreover, Senator Clark described section 604.18 as providing a "penalty" during the senate floor debate. S. Floor Deb. on S.F. 2822 (Apr. 14, 2008) (statement of Sen. Clark).

We note that "proceeds" is typically used in caselaw in disputes involving damages arising from an insurance policy or another contractual agreement. *See, e.g.*, *Star Windshield Repair, Inc. v. W. Nat'l Ins. Co.*, 768 N.W.2d 346 (Minn. 2009) (referring to proceeds of insurance policy); *Kliniski v. Southdale Manor, Inc.*, 518 N.W.2d 7 (Minn. 1994) (referring to proceeds of settlement agreement); *Henning v. Wineman*, 306 N.W.2d

18

550 (Minn. 1981) (referring to proceeds of settlement agreement); *Unborn Child v. Evans*, 310 Minn. 197, 245 N.W.2d 600 (1976) (referring to proceeds of insurance policy). This frequent use of "proceeds" in caselaw to refer to damages arising from a contractual relationship between the parties provides further support for our conclusion that the legislature intended "proceeds awarded" to mean the UIM award.

Finally, while the use of "proceeds" in other parts of section 604.18 does not persuade us that the term "proceeds awarded" in subdivision 3(a)(1) is unambiguous, we recognize that the other two times "proceeds" is mentioned in the statute, the term is used to refer to proceeds of an insurance policy. *See* Minn. Stat § 604.18, subd. 1(a) ("'Insurance policy' means a written agreement between an insured and an insurer that obligates an insurer to pay *proceeds* directly to an insured" (emphasis added)), subd. 3 ("Attorney fees may be awarded only if the fees sought . . . are not duplicative of the fees for the insured's attorney otherwise expended in pursuit of *proceeds* for the insured under the insurance policy." (emphasis added)). This consistent use of "proceeds" indicates that the legislature intended "proceeds awarded" to mean the UIM award.

In summary, given the ambiguity of the term "proceeds awarded," the legislative history, the principle of law that statutory provisions that provide for a penalty are construed narrowly against the penalty, the use of the term "proceeds" in caselaw, and the consistent use of the term "proceeds" in section 604.18, we conclude that "proceeds awarded" means the amount of the judgment entered by the district court as UIM benefits.

## D E C I S I O N

19

Because the term "proceeds awarded" means the amount of the judgment entered by the district court as UIM benefits, the district court properly calculated its discretionary award of taxable costs to Wilbur under Minn. Stat. § 604.18, subd. 3(a)(1).

**Affirmed.**